Joseph B. LOFTUS, Appellant,

v.

Freda LEE, Respondent.

No. 46266.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1958.

Ben W. Swofford, Robert A. Schroeder, Laurence R. Smith, Kansas City, Swofford, Schroeder & Shankland, Kansas City, of counsel, for appellant, Joseph B. Loftus.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, Langworthy, Matz & Linde, Kansas City, of counsel, for respondent.

Arthur F. Schmahlfeldt, Kansas City, Arthur C. Popham, Walter A. Raymond, Edgar J. Keating, Homer A. Cope, Vincent E. Baker, Samuel L. Trusty, Ernest Hubbell, amici curiæ.

HOLLINGSWORTH, Presiding Judge.

Plaintiff, a resident of Kansas, sued defendant, also a resident of Kansas, in the Circuit Court of Jackson County, Missouri, to recover damages in the sum of $10,000 for personal injuries suffered in a collision of their automobiles in Kansas. The trial court sustained defendant's motion to dismiss on the ground of forum non conveniens. Plaintiff appealed. The questions for determination are (a) the availability of such a plea in this State, and, if available, (b) the propriety of the ruling under the facts.

The cause has been ably briefed not only by the parties but also by the Kansas City Bar Association as "amicus curiae on the ground that the case involves an issue of great public interest and importance which vitally affects the interests and welfare of the people and the bar of this state, * *."

The cause is here upon the petition, the motion to dismiss and the judgment. The petition alleges that the collision occurred at the intersection of 78th and Lowell Streets in Johnson County, Kansas, as a direct result of defendant's negligence in certain particulars and that such negligence was the proximate cause of plaintiff's injuries. Defendant was personally served with summons in Jackson County, Missouri. Thereafter, defendant timely filed verified special entry of appearance and motion to dismiss on the sole ground of forum non conveniens. The motion alleged: Plaintiff is a citizen and resident of Wyandotte County, Kansas, which is adjacent to Johnson County, Kansas; defendant is a citizen and resident of Johnson County; the cause of action arose in Johnson County and all known witnesses reside there; plaintiff can file his suit in Johnson County and obtain personal service there; defendant's presence in Missouri at the time of service was occasioned by her attending business college; the only Missouri contacts with the action are that plaintiff retained Missouri attorneys and defendant is a student at a business school in Missouri; a trial of the cause can be had in Johnson County within six months and can not be had in Jackson County, Missouri, within eighteen months.

The verified allegations of defendant's motion were not denied and, for the purpose of the ruling of the trial court and this appeal, are admitted. Upon hearing, the motion was sustained, plaintiff's action was dismissed and defendant was awarded judgment for her costs.

Plaintiff's argument in this court is predicated upon four basic contentions of law:

(1) The trial court was without jurisdiction to grant defendant's motion to dismiss on grounds of forum non conveniens;

(2) If the trial court had the power to apply the doctrine of forum non conveniens, such doctrine should be rejected as against public policy;

(3) If this court should decide that the trial court had jurisdiction to rule the motion, the sustainment of it was an abuse of discretion; and

(4) The case of Elliott v. Johnston, 365 Mo. 881, 292 S.W.2d 589, upon which the trial court ruled the motion, is not controlling or authoritative in the instant case.

The Elliott case, supra, as the instant case, was a transitory action in tort arising out of a collision of automobiles in Kansas, one driven by plaintiffs' decedent and the other driven by defendant, all residents of Kansas. The opinion reviews the development of the doctrine of forum non conveniens in the United States and in Missouri. After consideration of numerous decisions of both the Supreme Court of Missouri and the Supreme Court of the United States and certain articles appearing in several Law Reviews, the opinion declares, 292 S.W.2d loc. cit. 593: "The parties are all nonresidents, the actions or claims are upon a foreign transitory nonstatutory tort and the court had the inherent discretionary power to retain or to decline jurisdiction of these actions transplanted from their 'natural forum,' and the meritorious question is whether in the particular circumstances the forum is appropriate and whether the court abused its discretion. Annotation 32 A.L.R., 1. c. 33–40; 35 Cal.L.R., 1. c. 386, 402; 44 Har.L.R. 41; Gulf Oil Corporation v. Gilbert, supra [330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055]; Burt v. Isthmus Development Co., 5 Cir., 218 F.2d 353, 356."

Plaintiff herein, however, sharply challenges the soundness of that ruling. His first contention is that the general venue

statutes of Missouri, Sections 508.010 and 507.020, RSMo 1949, V.A.M.S.,[1] give him the right to sue in Missouri, and that Article IV, § 2, and § 1 of the XIV Amendment of the U. S. Constitution[2] prohibit Missouri from closing its courts to him.

 Plaintiff's admitted compliance with our general venue statutes unquestionably vested the Circuit Court of Jackson County with jurisdiction of the parties and the cause of action alleged in the petition. The law is clear, therefore, that a purely arbitrary dismissal of the action would be unconstitutional. See authorities collected in 35 California Law Review, 1947, pp. 389–390. However, as was held in Elliott v. Johnston, supra, 292 S.W.2d 589, 595, the dismissal of a suit predicated upon a rationalized distinction of privileges according to residence, as the administration of justice may require, does not run afoul of the federal constitutional clause here invoked by plaintiff. In Douglas v. New York, New Haven R. Co., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747, the Supreme Court held constitutional a provision of the New York Civil Code under which actions by nonresidents against foreign corporations doing business in New York were subject to dismissal. Under the statute there in question, the term "nonresident" was interpreted by the New York court to embrace citizens of New York who did not actually live in the state at the time the suit was brought. Mr. Justice Holmes, speaking for the court, said, 279 U.S. 377, 387, 49 S.Ct. 355, 356, 73 L.Ed. 747: "A distinction of privileges

according to residence may be based upon rational considerations and has been upheld by this Court, emphasizing the difference between citzenship and residence, in La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362."

(The Douglas case, supra, was an action under the Federal Employers' Liability Act, the special venue provisions of which (45 U.S.C.A. § 56) make questionable the constitutionality of any attempted application of the doctrine of forum non conveniens in F.E.L.A. cases under general venue statutes such as ours, unless we are also willing to extend application of the doctrine to citizens of Missouri who do not actually live within the State. In Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 505, 67 S.Ct. 839, 841, 91 L.Ed. 1055, the court said: "It is true that in cases under the Federal Employers' Liability Act we have held that plaintiff's choice of a forum cannot be defeated on the basis of forum non conveniens. But this was because the special venue act under which those cases are brought was believed to require it. Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28; Miles v. Illinois Central R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129. Those decisions do not purport to modify the doctrine as to other cases governed by the general venue statutes." In the Miles case, supra, 315 U.S. loc. cit. 703–704, 62 S.Ct. loc. cit. 830, it was said: "The opportunity to present causes of action arising under the F.E.L.A. in the state courts came, however, not from the state law but from

1. Section 508.010: "Suits instituted by summons shall, except as otherwise provided by law, be brought: * * * (4) When all the defendants are non residents of the state, suit may be brought in any county in this state; * * *."

Section 507.020: "Whenever a claim exists under the law of another state, action thereon may be brought in this state by (1) The person or persons entitled to the proceeds of such claim if he or they are authorized to bring such action by the laws of said other state; * * *."

2. Article IV, § 2: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The XIV Amendment, § 1: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * *."

the federal. By virtue of the Constitution, the courts of the several states must remain open to such litigants on the same basis that they are open to litigants with causes of action springing from a different source. This is so because the Federal Constitution makes the laws of the United States the supreme law of the land, binding on every citizen and every court and enforceable wherever jurisdiction is adequate for the purpose. * * * To deny citizens from other states, suitors under F.E.L.A., access to its courts would, if it permitted access to its own citizens, violate the Privileges and Immunities Clause." Consequently, our opinion herein, as did the opinion in Elliott v. Johnston, supra, 292 S.W.2d 589, excludes consideration of the doctrine of forum non conveniens in F.E.L.A. cases. See also State of Missouri ex rel. Southern Ry. Co. v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3, and State ex rel. Southern Ry. Co. v. Mayfield, 1951, 362 Mo. 101, 240 S.W.2d 106.)

■ But the Gulf Oil case, supra, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, definitely refutes and requires denial of plaintiff's contention of the federal unconstitutionality of the application of the doctrine of forum non conveniens in suits between nonresidents in tort actions (other than F.E.L.A. cases) arising beyond the borders of this State. In that case, a resident of Virginia brought an action in a federal district court in New York City against a Pennsylvania corporation qualified to do business in both Virginia and New York (where it had designated agents to receive service of process), to recover damages for destruction of plaintiff's public warehouse and its contents in Virginia by fire resulting from defendant's negligence. The federal court had jurisdiction (based solely on diversity of citizenship—the merits involved no federal question) and the venue was correct; but all events in litigation had taken place in Virginia, most of the witnesses resided there, and both state and federal courts in Virginia were available to plaintiff and

were able to obtain jurisdiction of defendant. Applying the doctrine of forum non conveniens, the trial court dismissed the suit. The U. S. Supreme Court held that the trial court had not abused its discretion. In so holding, the court said, 330 U.S. loc. cit. 507, 67 S.Ct. loc. cit. 842: "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction *even when jurisdiction is authorized by the letter of a general venue statute*. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." (Emphasis ours.)

Plaintiff's next contention is that the settled constitutional, statutory and decisional law of this State opens our courts to all persons regardless of citizenship and permits the plea of forum non conveniens only in exceptional instances, if at all.

An informative and well documented article written by Edward L. Barrett, Jr., appearing in 35 California Law Review, 1947, pp. 380–422, reviews the history of the doctrine in question. The term "forum non conveniens" originated in Scotland, where it did not mean simply an "inconvenient forum", but rather was it a term used by the Scottish trial courts in applying a settled rule of refusal to hear cases when the ends of justice would be best served by trial in another forum. It is the policy of some American courts to apply the doctrine to all tort cases (other than F.E.L.A.) and to deny it in most actions ex contractu unless complete justice otherwise requires, such as suits involving the internal affairs of foreign corporations, receiverships, accounting, stockholders' derivative actions, judgments and decrees re-

quiring continued supervision, and other comparable matters. The New York courts consistently have based the doctrine upon the inconvenience and expense imposed upon the taxpayers and the time consumed by their judges and jurors if nonresident litigants are admitted to their courts to try causes of action arising beyond the borders of that State. In England, where the doctrine has long been recognized, the emphasis is placed upon abuse of the court's processes. There, it seems, both serious injustice to the defendant and an improper motive on the part of the plaintiff are necessary to call forth its application. Logan v. Bank of Scotland (1906), 1. K. B. 141. Defendant's brief lists some eighteen of the states said to have applied or favorably recognized the doctrine and four that have rejected it, the latter being Alabama, Wisconsin, Texas and Ohio. See St. Louis University Law Journal (Fall 1956), Vol. 4, No. 2, p. 198; Washington University Law Quarterly, Vol. 1957, No. 2, p. 165.

In Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, it is said of the doctrine:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises,

if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

In Koster v. (American) Lumbermens Mutual Co., 1947, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067, it was said: "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."

In Elliott v. Johnston, supra, 365 Mo. 881, 292 S.W.2d 589, 594, it was also noted that a " 'nexus' with Missouri and its courts" was a factor in the refusal to apply

the doctrine in some of the earlier Missouri cases. Plaintiff in the instant case, while urging that the existence of a "nexus" is not a condition precedent to the maintenance of his action in Missouri courts, nevertheless, further asserts that if a rule of "nexus" is adopted, then the instant case qualifies as having a "nexus" with Missouri and our courts. His argument in support of that contention runs this wise: "As we pointed out * * *, both the plaintiff and defendant were residents of the Greater Kansas City area. Defendant took daily advantage of Kansas City, Missouri, service facilities, police protection, use of streets, and the record discloses that she, in fact attended a Kansas City, Missouri, school. Therefore, if she were not *in fact* a citizen and resident of Missouri, she was a resident *'for the purpose of suit'* as stated in Elliott. She was in fact served or 'found' in Missouri. Her tie or connection with Missouri (i. e. nexus) was constant, free and complete." (Emphasis his.) The brief of amicus curiae suggests that those "who urge the adoption of the fiction of forum non conveniens, state that what they fear is that the court will entertain actions from far distant places. However, the adventure into the field which is represented by the case of Loftus v. Lee shows that the result is to exclude cases which are neighborhood cases, rather than cases from far distant points. We are not confronted with a far distant case. We are confronted in the instant case with dismissal of a neighborhood cause of action."

If it be determined that the doctrine of forum non conveniens is available in Missouri, then it would seem that a "nexus" of community integration, such as transportation facilities, etc., would have a bearing upon the question of the "inconvenience" of the forum.

■ Article I, § 14, of the Constitution of Missouri, V.A.M.S., declares that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, *and that right and justice shall be administered without sale, denial or delay."* (Emphasis ours.) Plaintiff stresses the first two clauses, especially the terms "every person" and "every injury", but fails to note the very important fact that both of the first two clauses are joined by the conjunctive "and" with the clause "that right and justice shall be administered without sale, denial or delay." When Section 14 is considered in its entirety and complete context, it is found to mean that our courts are open to every person *to the end that justice be neither denied or delayed.* So it would seem clear that if justice would be either denied or prejudicially delayed by the trial court's retention of jurisdiction, the plea of forum non conveniens would not be at odds with the clear wording and intendment of our Constitution.

■ Therefore, while there can be no doubt that our constitution and general venue statutes make it the policy of this State that our courts shall be open to every person, and so that general policy should remain, *but it is also a primary constitutional duty of courts to function to the end that right and justice be administered without sale, denial or delay.* It is further obvious, we think, that neither our constitution nor our statutes were intended to mean that our courts be required to submit to an abuse of their process by nonresidents. To construe our constitution or statutes otherwise would be to afford nonresident plaintiffs a forum that could be used by them to work an injustice upon their adversaries when there was another forum available where *justice could be had by both parties.* Such construction would defeat, pro tanto, the constitutional provision for the establishment of courts for the administration of justice.

■ We deem it also clear that the nondelegable duty inherently and primarily rests upon the courts to prevent abuse of their process, independently of the Legislature.

The learned author of the article in 35 California Law Review, supra, loc. cit.

420–421, says: "Even in applying the doctrine with the objective of doing justice between the parties, courts must take care to see that the effort to minimize hardship to the defendant does not result in imposing new and unreasonable burdens on the plaintiff. Delay, particularly in personal injury actions, favors the defendant. And the added expense and difficulties of commencing suit anew in another state may be sufficient to wipe out a plaintiff's claim. Often these factors will make outright dismissal of the suit improper." And further, loc. cit. 422: "The modern rules of venue and jurisdiction have been designed to give a plaintiff every reasonable opportunity to recover for his wrongs. He should be denied the right to sue on a transitory cause of action in a court with jurisdiction over the parties only on a clear showing that he is abusing those rules for the purpose of vexing and harassing the defendant. Caution must be exercised in every case if the plea of forum non conveniens is not to become a powerful weapon in the hands of the defendant who is seeking to avoid his obligations."

■ It is our conclusion that the doctrine of forum non conveniens is an arm of the courts of this State to be applied with caution and only upon clear showing of inconvenience of forum and when the ends of justice require it.

■ We turn now to consideration of the merits of the motion to dismiss. The grounds for dismissal are that all of the witnesses reside in Johnson County, defendant is a minor, trial can be had in Johnson County within six months and cannot be had in Missouri within eighteen months. There is no allegation of prejudicial inconvenience or reasonable likelihood of a denial or delay of justice.

We are advised by plaintiff's brief and we know by reference to accepted atlases and plats that the place of collision (Johnson County, Kansas) is in a residential suburb of Kansas City, Jackson County, Missouri, known as Overland Park District; that Johnson County and especially Overland Park District is immediately contiguous to the southern residential district of Kansas City, separated only by the state line; and that Wyandotte County, Kansas, is north of and contiguous to Johnson County and immediately west of Kansas City.

Under a state of facts more favorable to the application of forum non conveniens than those in the instant case, the Supreme Court of Kansas, in Bavuso v. Angwin, 166 Kan. 469, 201 P.2d 1057, 1061, was impelled to say: "The general rule is that in a transitory action such as this, a plaintiff is entitled to select the forum. The fact that a large number of the witnesses to be called in the case reside in this state, where the cause of action accrued, making it necessary to take depositions instead of oral testimony; that trial procedure in the sister state is different from that in this state; that a verdict may be rendered by nine concurring jurors in the sister state; that the parties will be put to considerable additional expense and inconvenience; that delay will result because of the crowded condition of the docket in the sister state— are not in and of themselves sufficient grounds for enjoining a party from commencing and prosecuting an action in such sister state. There is no showing or proof in this case that the filing of the action in Missouri was fraudulent, oppressive, or manifestly unjust. It must be assumed that the court of the sister state will give both parties a fair trial and will administer the substantive law applicable as though the case were tried in Kansas. Missouri-Kansas-Texas R. Co. v. Ball, 126 Kan. 745, 271 P. 313."

We hold that the facts alleged in the motion to dismiss do not warrant application of the doctrine of forum non conveniens and that the motion was erroneously ruled.

The judgment is reversed and the cause remanded.

All concur.